IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marlon Rivera, #311864, | ) | C/A No. 5:16-00837-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Scott Lewis, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Marlon Rivera ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Respondent's Motion for Summary Judgment and Return and Memorandum of Law in Support of Motion for Summary Judgment. ECF Nos. 20, 19. On July 18, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Motion for Summary Judgment, the dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 22. On August 10, 2016, Petitioner responded to the *Roseboro* order with a "Motion for Judgment on the Pleading," and a "Response and Return Memorandum of Law in Support of Motion for Summary Judgment." ECF Nos. 26, 26-1. On August 22, 2016, Respondent filed a Reply to Response in Opposition to Motion for Summary Judgment. ECF No. 28. On September 7, 2016, Petitioner responded with a "Motion for Facts Development Proceed Pursuant to FRCP Rule 11.7(c)(d); Reply to Response in Opposition [sic] to Motion for Summary Judgment." ECF No.

31. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be granted.

I.     Background

Petitioner is currently incarcerated in the Tyger River Correctional Institution ("TRCI") of the South Carolina Department of Corrections ("SCDC"). ECF No. 31. In 2004, Petitioner was indicted at the October term of the Greenville County Grand Jury for one count of murder, in violation of S.C. Code § 16-3-10 (2004-GS-23-7693). App. 827-28.[1] Petitioner proceeded to a jury trial on October 10-13, 2005, before the Honorable C. Victor Pyle, Jr., Circuit Court Judge. App. 1. Petitioner was represented by Susannah Ross, Assistant Public Defender for Greenville County, and the State was represented by Assistant Solicitor Kris Hodge. *Id*. Petitioner, who is from Honduras, testified on his own behalf through a Spanish interpreter, Carlos Freeman, who was seated beside Petitioner throughout the entire trial and translated for Petitioner during the trial. App. 453, 2. In addition, the Official Spanish Interpreter for Witnesses, Efrain Pineros, was present. App. 2. Petitioner requested that the jury be charged on self-defense, accident, and involuntary manslaughter, but the judge denied his request. App. 662. On October 13, 2005, the jury found Petitioner guilty of murder. App. 578. Judge Pyle sentenced Petitioner to thirty years imprisonment. App. 585.

II.     Procedural History

A.     Petitioner's Direct Appeal

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claims for direct and collateral relief in the state courts of South Carolina. That Appendix is available at ECF Nos. 19-1 through 19-21 in this habeas matter.

Robert M. Dudek, Deputy Chief Attorney for Capital Appeals with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner in the appeal of his conviction and sentence. Petitioner's counsel raised five issues, the last two of which were consolidated into one statement of error. These issues are set forth verbatim below:

1.

The judge erred by admitting appellant's inculpatory statement to the police where it was undisputed that appellant could not read or write Spanish or English, a police investigator acknowledged he physically pulled appellant up by the belt on his shackles to his feet during the interrogation while it was also undisputed the police called appellant a liar. Appellant also offered expert testimony of his fear and inability to understand the interrogation given the cultural differences, the language barrier, and the physical and verbal abuse and intimidation. Appellant's confession should have been suppressed given all of these circumstances.

2.

The judge erred by admitting the hearsay testimony of Investigator Wesley Smith that Officer Rivera told him while appellant was being escorted to the detention center after giving his confession that Rivera told Smith appellant had told him the officers had been "too nice about it," and that in his country "they'd put a bag over the head and beat us" since this was hearsay testimony and prejudicial.

3.

The court abused his discretion by ruling interpreter and defense investigator Carlos Freeman could not testify because he remained in the courtroom with appellant throughout the trial, reasoning this violated the sequestration order. This ruling was fundamentally unfair. Freeman was relied upon as an interpreter by the defense during the trial, and therefore his presence was necessary in the courtroom.

4 & 5.

The court erred by ruling appellant was not entitled to an instruction on involuntary manslaughter or accident where the state elicited testimony that appellant told witness Nelson Castro that he had been wrestling with someone "and that the weapon just went off by itself." There was also evidence appellant was resisting an attack. Defense counsel correctly argued appellant was armed in

3

> self-defense under *State v. Burriss* and *State v. Crosby*, and that appellant was entitled [to] an involuntary manslaughter instruction given this evidence. The same argument applies under *Burriss* on an accident instruction. Both issues were jury questions and the judge erred as a matter of law by reasoning inconsistent testimony meant appellant was not entitled to the other instructions. (Issues four and five).

App. 674-75. In an unpublished per curiam opinion filed March 18, 2008, the South Carolina Court of Appeals reversed the trial court and remanded for a new trial, holding that because there was some evidence to support an involuntary manslaughter charge, the trial judge erred by failing to instruct the jury on involuntary manslaughter. *State v. Rivera*, Op. No. 1008-UP-187 (S.C. Ct. App. filed Mar. 18, 2008), App. 660-665. On April 2, 2008, the State filed a Petition for Rehearing, which was denied by the South Carolina Court of Appeals in a per curiam order filed on May 22, 2008. ECF Nos. 19-6, 19-7. Thereafter, the State filed a Petition for Writ of Certiorari, arguing that the Court of Appeals erred in finding the trial court should have charged involuntary manslaughter. App. 790-807. Petitioner filed a Return to Petition for Writ of Certiorari, arguing that he was entitled to the charge on the lesser-included offense. App. 808-19. On July 9, 2009, the Supreme Court of South Carolina granted a writ of certiorari to review the Court of Appeals' March 18, 2008 opinion. ECF No. 19-8. In a published opinion filed September 7, 2010, the South Carolina Supreme Court, voting 3-2, reversed the South Carolina Court of Appeals, and reinstated Petitioner's conviction and sentence, holding that Petitioner was not entitled to a jury charge on involuntary manslaughter. *State v. Rivera*, 699 S.E.2d 157, 160 (S.C. 2010), App. 666-72. Petitioner filed a Petition for Rehearing, and on October 7, 2010, the South Carolina Supreme Court, again voting 3-2, denied the Petition for Rehearing in a summary order. ECF Nos. 19-10, 19-11. The Remittitur was issued on October 7, 2010, and filed with the Clerk of Court for Greenville County on November 1, 2010. ECF No. 19-12.

B.    Petitioner's Application for Post-Conviction Relief

On February 17, 2011 Petitioner timely filed a pro se application for Post-Conviction

Relief ("PCR") (2011-CP-23-1209), alleging eight grounds for relief. App. 636-55. The PCR

grounds are set forth below verbatim:

> (A) Ineffective Assistance of Trial Counsel
>
> (B) Ineffective Assistance of Appellate Counsel
>
> (C) Prosecutor Misconduct
>
> (D) The trial court erred when it erroneously charged the jury, that it may infer malice from the use of a deadly weapon.
>
> (E) The State failed to establish a complete chain of custody, in regards to foreensic and other evidence, in violation of rule 6, SCRCrimP.
>
> (F) The Judge erred by admitting Applicant's incupator statement to the police where it was undisputed that he could not read or write Spanish or English.
>
> (G) The Judge erred by admitting hearsay testimony of Investigator Wesley Smith, that was very prejudicial to the Applicant, in front of the jury.
>
> (H) The court abused his discretion by ruling Interpreter and defence Investigator, Carlos Freeman could not testify as a defense witness.

App. 642. Petitioner appended fourteen pages of argument to his form PCR application. App.

642-55. A Return was filed on behalf of the State on June 28, 2011. App. 656-59. On August 26,

2013, the Honorable Robin B. Stilwell held an evidentiary hearing on Petitioner's PCR

application. App. 588-635. Petitioner was present and represented by Attorney Jeff Wilkes;

Assistant Attorney General Karen C. Ratigan appeared on behalf of the State. App. 588. An

interpreter was present and was sworn. App. 590. Petitioner's appellate counsel, Mr. Dudek,

testified first. App. 591-97. Petitioner's witness, Juan Carosmacano, testified through the

interpreter.[2] App. 597-603. Petitioner's trial counsel, Ms. Ross, also testified. App. 603-631.

After Ms. Ross was cross-examined, Judge Stilwell questioned Ms. Ross. App. 630-31.

Petitioner did not testify. *See generally*, App. 588-635.

In an Order filed on November 8, 2013, the PCR court denied Petitioner's PCR

application in full, making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly.

> Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

### Ineffective Assistance of Trial Counsel

> The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002).

> For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry v. State, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052).

---

[2] The PCR court refers to this witness as Juan Carlos Macano. The PCR transcript indicates that the witness spelled his surname "Carosmacano." App. 597.

Juan Carlos Macano stated he was a bouncer at a bar called La Roomba at the time of the shooting. Macano stated he was an acquaintance of the Applicant's at the time. Macano stated he checked the Applicant at the door of the bar that night, felt an object, and told the Applicant to leave. Macano stated the Applicant did not have the item when he returned. Macano stated the Applicant fought with another man outside and the Applicant took out his gun. Macano stated the Applicant dropped his gun and a man picked it up and fired. Macano stated the Applicant never fired the gun. Macano admitted he did not contact the police or give a statement.

Trial counsel testified she filed discovery motions and then reviewed the discovery materials both independently and with the Applicant and an interpreter. Trial counsel testified the discovery materials included the incident reports, the Applicant's confession, witness statements, the autopsy report, and the gunshot residue test. Trial counsel testified she moved to quash the indictment. Trial counsel testified Macano's name was neither included in a potential list of witnesses nor uncovered by her investigator. Trial counsel testified that, in retrospect, she wished she had not moved to sequester witnesses because two witnesses (her investigator and Yamileth Corrales) could not testify. Trial counsel testified she could have objected to the chain of custody for the gunshot residue evidence. Trial counsel testified she did not object to a comment made about defense witnesses during the assistant solicitor's closing argument.

This Court [finds] trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in her representation.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not make a proper motion to quash the indictment. This Court finds the Applicant has failed to demonstrate either error or prejudice because a motion to quash the indictment was not filed sooner. See State v. Culbreath, 282 S.C. 38, 40, 316 S.E.2d 681, 681 (1984) ("[T]he failure of the solicitor to act upon a warrant within ninety (90) days . . . does not within itself invalidate a warrant or prevent subsequent prosecution."). Further, this Court finds the Applicant failed to provide evidence of any prejudice that resulted from the delay. See, e.g., State v. Pittman, 373 S.C. 527, 647 S.E.2d 144 (2007) (noting one must prove prejudice in order to prevail on an allegation that one's speedy trial rights were violated). This Court further notes the true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. State v. Gentry, 363 S.C. 93, 103, 610 S.E.2d 494, 500 (2005). Indictments are not evidentiary or jurisdictional documents – they are merely notice documents. Id. at 102, 610 S.E.2d at 500. This Court finds the Applicant has failed to present any evidence that the

indictment in this case did not provide notice of the charge upon which he would be tried.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not interview a witness. Trial counsel testified that Juan Carlos Macano's name never came up during his investigation of this case. This Court finds trial counsel's testimony is credible. In contrast, this Court finds Macano's testimony is not credible. Macano testified he worked at a bar called La Roomba and his boss's name was Pepe. The trial transcript indicated the incident with the bouncer occurred at a bar called The Mexicali, which was operated by Carlos Estrado. [Estrado testified The Mexcali was two blocks away from La Roomba. (Trial transcript, p.68)]. Further, Macano testified the Applicant never shot the gun; however, both the Applicant's statement and trial testimony indicated he fired the gun. Macano was not a credible witness who would have positively impacted the defense case.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not properly handle the sequestration issue. Trial counsel moved to sequester witnesses at trial. This Court notes trial counsel's investigator and another witness (Corrales) were thus barred from testifying later in the trial. This Court finds the Applicant cannot prove he suffered any prejudice. The investigator's testimony was proffered to the trial judge. (Trial transcript, pp. 382-99). This Court finds the investigator's testimony contained several instances of hearsay. The investigator's testimony was also cumulative to testimony given by Investigator Smith. In addition, as Corrales did not testify at the PCR hearing, this Court cannot speculate as to whether her testimony at trial would have affected the outcome of the case. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis in original).

This Court finds the Applicant failed to meet his burden of proving trial counsel did not properly challenge the chain of custody of the gunshot residue evidence. Evidence is inadmissible only where there is a missing link in the chain of possession because the identity of those who handled the evidence was not established at least as far as practicable. See State v. Horton, 359 S.C. 555, 567, 598 S.E.2d 279, 286 (Ct. App. 2004). This Court finds the Applicant failed to present any evidence or testimony that there was a missing link in the chain of custody or any potential contamination of evidence in this case. Without such evince [sic] before this Court, the Applicant cannot prove he was prejudiced because trial counsel did not challenge the chain of custody.

8

This Court finds the Applicant has failed to meet his burden of proving trial counsel should have objected during the assistant solicitor's closing argument. At trial, the assistant solicitor stated "their eyewitnesses . . . there are two, there are only two that they presented." (Trial transcript, p. 522, lines 16-17). This Court finds there was no valid, sustainable objection that trial counsel could have made respecting this comment that would have changed the outcome of the Applicant's trial. See State v. Huggins, 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997) (finding a solicitor's argument must stay within the record and its reasonable inferences); see also State v. Cooper, 334 S.C. 540, 553, 514 S.E.2d 584, 591 (1999) (noting a solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony).

This Court finds the Applicant has failed to demonstrate that any acts or omissions by trial counsel prejudiced his case. This Court finds the State presented overwhelming evidence of the Applicant's guilt. The bouncer at The Mexicali would not let the Applicant into the club because he had a weapon. The Applicant left and returned without a weapon but a weapon was found in a tree outside The Mexicali. Alvaro Fernandez identified the Applicant as the shooter. There was a lead particle on the Applicant's hand. The Applicant told his cousin (Nelson Castro) that he shot someone but did not say anyone else fired the gun. The Applicant's statement to Detective Rivera was that he was mad and shot the gun twice (without stating anyone else fired the gun). The Applicant testified at trial that he fired twice during a fight and was not in fear for his life. Based upon all of this evidence, the Applicant cannot demonstrate prejudice. See Franklin v. Catoe, 346 S.C. 563, 570 n.3, 552 S.E.2d 718, 722 n.3 (2001) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test–that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in her representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland–that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

**Ineffective Assistance of Appellate Counsel**

A defendant is constitutionally entitled to effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830 (1985). In analyzing a claim of ineffective assistance of appellate counsel, the Court applies the Strickland test just as it would when analyzing a claim of ineffective assistance of trial counsel. See Bennett v. State, 383 S.C. 303, 309, 680 S.E.2d 273, 276 (2009); Southerland v. State, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999) (noting courts apply the Strickland test to determine if appellate counsel was deficient for failing to raise an issue and whether the defendant was prejudiced from the failure to raise the issue).

Appellate counsel stated he was successful on appeal to the Court of Appeals. Appellate counsel stated he raised five issues on appeal to the Court of Appeals but that the court only addressed one of these issues. Appellate counsel said the State appealed and the Supreme Court reversed the Court of Appeals. Appellate counsel stated that, in retrospect, he wished he had asked the Supreme Court to remand the case back to the Court of Appeals to address the four issues they did not address the first time. Appellate counsel stated he could recall a single instance in which such a request has been successful.

This Court finds the Applicant failed to meet his burden of proving appellate counsel was ineffective. The Applicant argues appellate counsel should have filed a motion to remand the case to the Court of Appeals–after the Supreme Court opinion was issued–in order for several issues to be addressed. The Applicant, however, failed to point to any case law or precedent that would allow appellate counsel to pursue such action. Rather, appellate counsel merely testified he recalled such a motion was filed by another attorney in his office at some point in the past. This Court does not find appellate counsel was deficient or that the issues that were not ruled upon by the Court of Appeals were meritorious. This Court finds the issues not ruled upon by the Court of Appeals or Supreme Court were unlikely to have been resolved in favor of the Applicant. This Court finds the propositions of law at issue are dubious, and the Court of Appeals most probably decided to address issues that were of marginal merit. Instead the Court of Appeals and Supreme Court chose to discuss the issue of the charge on the law. That, ultimately, was the material issue that needed resolution by the appellate courts and that issue was properly preserved, presented, and ruled upon. This Court further finds the Applicant cannot prove any prejudice related to this issue since, as noted supra, the State presented overwhelming evidence of guilt.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the

hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial, sentencing, and appellate proceedings. Counsel was not deficient and the Applicant was not prejudiced by counsels' representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

**IT IS THEREFORE ORDERED:**

1.    That the application for post-conviction relief be denied and dismissed with prejudice; and

2.    That the Applicant be remanded to the custody of the Respondent.

ECF No. 19-21 (internal footnote included in brackets).

C.    Petitioner's Appeal of the PCR Court's Order

On December 13, 2013, Petitioner's PCR counsel, Mr. Wilkes, timely filed a notice of appeal of the PCR order and perfected the appeal with the filing of a *Johnson* Petition for Writ of Certiorari.[3] ECF No 19-14. Mr. Wilkes also petitioned to be relieved as counsel. ECF No. 19-14 at 7. Petitioner's *Johnson* petition presented one issue for review:

Did appellate counsel's failure to petitioner this Court for a remand of Appellant's remaining issues back to the Court of Appeals for a ruling on the merits constitute ineffective assistance of counsel?

---

[3] *Johnson v. State*, 364 S.E. 2d 201 (S.C. 1988) (per curiam).

*See id*. at 3. On July 10, 2014, the Supreme Court of South Carolina advised Petitioner by letter that he was permitted to file a pro se response to the petition within forty-five days. ECF No. 19-15. The record does not reflect that Petitioner did so. On October 9, 2014, the Supreme Court of South Carolina issued an order denying Mr. Wilkes' request to be relieved as counsel and directing the parties to address the following question:

> Following this Court's reversal of the Court of Appeals' opinion, was appellate counsel ineffective in failing to petition this Court to remand the matter for consideration of the remaining issues on appeal?

ECF No. 19-16. On November 10, 2014, Petitioner filed his counseled Petition for Writ of Certiorari which argued that appellate counsel was ineffective when he failed to petition the Court to remand the matter for consideration of the remaining issues on appeal. ECF No. 19-17 at 6. The State timely filed a Return. ECF No. 19-18.

On May 6, 2015, the Supreme Court of South Carolina denied Petitioner's Petition for Writ of Certiorari, stating:

> This matter is before the Court on a petition for a writ of certiorari following the denial of petitioner's application for post-conviction relief (PCR). We find the PCR judge erred in determining appellate counsel was not deficient. However, we have reviewed the final brief petitioner submitted to the Court of Appeals, which petitioner submitted with the petition for a writ of certiorari in this matter, and find the remaining direct appeal issues that were not ruled on are without merit. The PCR Judge was therefore correct in finding petitioner was not prejudiced by appellate counsel's deficiency. Accordingly, the petition is denied.

ECF No. 19-19. The Remittitur was issued on May 22, 2015 and filed on May 28, 2015. ECF No. 19-20. On March 9, 2016, Petitioner filed the present Petition. ECF No. 1-1 at 1. [4]

---

[4] Pursuant to *Houston v. Lack*, 487 U.S. 266, 270 (1988), a state prisoner's pro se petition for habeas corpus relief is deemed "filed" at the moment of delivery to prison authorities for

III.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus,

quoted verbatim:

> GROUND ONE: Ineffective Assistance of Trial Counsel
> Supporting facts: After the jury had been sworn in trial counsel made a
> Motion to Quash the Indicment. Trial counsel motion to sequester the
> witnesses; gave the state and undue advantage against the Petitioner. Trial
> counsel failed to "object" to the prosecutor's closing argument's to the
> jury. Trial counsel failed to "object" to the judge's erroneous jury charge.
> Trial counsel strategy, to use expert witness, who had only met and
> observed Petitioner thirty (30) minutes the day before trial. ECF No. 1 at
> 6.
>
> GROUND TWO: Ineffective of Assistance of Appellate Counsel
> Supporting facts: Appellate counsel was ineffective when he failed to spot
> a prejudicial issue, that denied Petitioner due process of law: Appellate
> counsel failed to preserved Petitioner's other four issue: Appellate counsel
> failed to ask the Supreme Court of South Carolina to remand the case back
> to the Court of Appeal to make findings and address issue one through
> four that the court did not address: Appellate counsel failed to raised that
> the state's brief raised that preservation of error issue. *Id.* at 7-8.
>
> GROUND THREE: Prosecutor Misconduct
> Supporting facts: The Prosecutor's statement in the closing argument:
> "That Malice can be Implied by the use of a Deadly Weapon." The
> prosecutor is guilty of misconduct, by vouching for the Credibility of their
> witness, as was done in the Petitioner case. *Id.* at 9.
>
> GROUND FOUR: Trial Court Erred
> Supporting facts: The trial court's erred when it erroneously charge the
> jury that infer malice from the use of a deadly weapon. The trial court's
> erred and abuse of their discretion by ruling interpreter, Carlos Freeman
> would not be allowed to testify because he was in violation of the
> sequestration order. *Id.* at 11.

---

forwarding to the district court. Petitioner's envelope does not bear a "received" stamp from the
SCDC, so the undersigned will use the date of the postage meter tape as the filing date.

B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g, Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a

14

federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.    Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Further, the AEDPA provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Under subsection (A), "the one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired, unless one of the circumstances enumerated [in subsections (B), (C), or (D)] is present and starts the clock running at a later date." *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002).

The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is

15

pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In interpreting §§ 2244(d)(1) and (2), the Fourth Circuit has held the time that elapses between completion (or expiration) of direct review and commencement of state post-conviction review counts toward the one-year limitation period. *See Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000) ("In short, [28 U.S.C. § 2244(d)] provides that upon conclusion of direct review of a judgment of conviction, the one-year period within which to file a federal habeas petition commences, but the running of the period is suspended for the period when state post-conviction proceedings are pending in any state court."). "Moreover, the one-year limitation period is also subject to equitable tolling in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party." *Hill*, 277 F.3d at 704.

  B.  Whether Petitioner's Application Is Time-Barred

  Respondent contends that Petitioner's Petition is untimely under 28 U.S.C. § 2244(d) and therefore should be dismissed. ECF No. 19 at 25-30. According to Respondent, Petitioner's one-year limitations period began to run on October 8, 2010, the day after the Supreme Court of South Carolina denied his Petition for Rehearing and issued the remittitur on his direct criminal appeal, and continued to run until February 17, 2011, the date Petitioner filed his PCR Application. ECF No. 19 at 26-27. Respondent calculates that 133 days had elapsed by the time Petitioner filed his PCR Application, leaving 232 days within which Petitioner could timely file a federal habeas petition. *Id*. at 27. Respondent argues that the statute of limitations began again on May 23, 2015, the day after the remittitur for the PCR appeal was issued, and that Petitioner had 232 days from May 22, 2015 to file his federal habeas corpus petition, or until November 9,

2015.[5] *Id.* at 27-28. By this calculation, Respondent asserts that Petitioner missed the statute of limitations by 121 days when he filed his Petition on March 9, 2016.

Because the undersigned finds Respondent's argument to use the incorrect date as the starting point for determining the commencement of the AEDPA's one-year statute of limitations, Respondent's calculations are incorrect. Petitioner's Petition was timely filed. The one-year limitations period begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

In the present case, Petitioner completed the direct review of his state court conviction by filing a Petition for Rehearing of the Supreme Court of South Carolina's order, which was denied by an order dated October 7, 2010. ECF No. 19-11. Without any real discussion, Respondent uses the next day—October 8, 2010—as the starting point of the one-year statute of limitations.

---

[5] The undersigned notes Respondent asserts the incorrect date of November 9, 2015; however, 232 days from May 22, 2015, would have been January 8, 2016.

ECF No. 26. Respondent does not reference *Gonzalez* or other cases that explain that the AEDPA's limitations period does not begin to run for a § 2254 petitioner who has pursued all appellate avenues in his state's highest court until the conclusion of the time for seeking further direct review expires. As *Gonzalez* provides, this includes the 90-day time for seeking certiorari with the Supreme Court of the United States regardless of whether a petition for a writ of certiorari was sought.

Petitioner did not seek a writ of certiorari to the Supreme Court of the United States, although he could have done so. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . . "). Respondent does not argue that Petitioner did not pursue direct appellate review to the highest court in South Carolina. Rather, in a footnote, Respondent advances the novel argument that "[s]ince a federal issue was not available for review in the appeal to the South Carolina Supreme Court, Petitioner's conviction became final with the South Carolina Supreme Court's Order denying the Petition for Rehearing." ECF No. 19 at 26, n.4 (citing portions of a 1999 case from the Ninth Circuit Court of Appeals and of Supreme Court Rule 10(b)). The Court's rules concerning certiorari review plainly do not support Respondent's argument. The snippet of Supreme Court Rule 10(b) cited by Respondent—that certiorari is considered when a "'state court' of last resort has decided an important federal question" is but one consideration of the Court in determining whether to grant the writ of certiorari. That same Rule notes the Court's broad discretion in determining whether to grant the writ. U.S. Sup. Ct. R. 10. Nothing in that Rule (or any authority of which the undersigned is aware) prohibits a litigant who has pursued all remedies in the highest court of his state from seeking the writ.

Thus, *Gonzalez* mandates that Petitioner is entitled to the 90-day period in which he could have sought certiorari before the AEDPA's statute of limitations began to run. *Hill*, 277 F.3d at 704) (If a petitioner seeks direct review in all appropriate state courts but does not file a petition for a writ of certiorari in the United States Supreme Court following direct review in the state courts, "then the limitation period begins running when the time for [filing a petition in the Supreme Court]–90 days–has elapsed.").

With respect to the present Petition, Petitioner was entitled to the 90 days in which he could have sought certiorari. Petitioner's 90 days began on Thursday, October 8, 2010, the day after the Supreme Court of South Carolina filed its order denying his Petition for Rehearing, and ended on Wednesday, January 5, 2011, the last day he would have been able to file for certiorari. The AEDPA's one year statute of limitations began to run on Thursday, January 6, 2011, and ran for 43 days, until being tolled on February 17, 2011, when Petitioner filed his PCR application. 28 U.S.C. § 2244(d)(2); *see* PCR Application, ECF No. 19-3; *see Gary v. State*, 557 S.E.2d 662, 663 (S.C. 2001) (the filing of a petition for PCR occurs when the application is delivered to and received by the Clerk of Court, citing S.C. Code Ann. § 17-27-40 (1985)). The tolling period applicable to a properly filed PCR application remains in place while the PCR application remains "pending." 28 U.S.C. § 2244(d)(2).

On May 6, 2015, the Supreme Court of South Carolina denied Petitioner's Petition for Writ of Certiorari as to the PCR matter. ECF No. 19-19. The Remittitur of the PCR matter was issued on May 22, 2015; the AEDPA's statute of limitations remained tolled until May 28, 2015, the date the Remittitur denying Petitioner's Petition for Writ of Certiorari was filed in the Office of the Clerk of Court for Greenville County. ECF No. 19-20; *see Beatty v. Rawski,* 97 F. Supp.

19

3d 768, 780 (D.S.C. 2015) ("[t]he final disposition of Petitioner's PCR did not occur until the remittitur was filed in the state circuit court."); *reasoning adopted in Drake v. Boulware*, No. 8:15-cv-04658-RMG, 2016 WL 6304679, at *2 (D.S.C. Oct. 27, 2016) and *Lyles v. Reynolds*, No. 6:15-cv-04229-RMG, 2016 WL 4940319, at *3 (D.S.C. Sept. 14, 2016).

On May 29, 2015, the AEDPA's statute of limitations again began to run. The undersigned calculates that 286 days elapsed until March 9, 2016, when Petitioner's petition for a writ of habeas corpus was filed with the Court. ECF No. 1-1 at 1. Adding 43 days (the time between the last day to petition for certiorari to the Supreme Court of the United States and the date Petitioner filed his PCR application) to 286 days equals 329 days. Thus, the undersigned concludes that Petitioner's Petition was timely filed.[6]

C.    Habeas Corpus Standard of Review

1.    Generally

Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. §§ 2254(d)(1)-(2); *see Williams v. Taylor*, 529 U.S. 362, 397-98 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent

---

[6] Given this conclusion, the undersigned will not address Petitioner's claims, in his "Motion for Facts Development," ECF No. 31, that Petitioner's alleged failure to timely file his Petition was the result of his counsels' failure to instruct him to maintain a current address with the court. An explanation of Petitioner's duty to keep the court informed of his current address was set forth in the court's Order filed in this case on March 21, 2016. ECF No. 7.

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

a)     Deference to State Court Decisions

Federal courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) (per curiam). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.; see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on claims of ineffective assistance of counsel).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court has held:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams*, 529 U.S. at 404-05 (quoting from § 2254(d)(1)). "'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citation omitted). A district court's review of a state court decision is "deferential because [the court] cannot grant relief unless the state court's result is legally or factually unreasonable." *Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (*quoting Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

Section 2254(e)(1) requires that the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2) only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b)       Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness" as measured "under prevailing professional norms." *Id.* at 688. Second, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Petitioner bears the burden of proving an error and resulting prejudice in his ineffective-assistance-of-counsel claim. *Id.*

The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations omitted); *see also Pinholster*, 563 U.S. at 190 (review of state court's decision is "doubly deferential") (citations omitted).

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits . . . ." 563 U.S. at 180-81. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182. In *Pinholster*, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 180. A divided panel of the Court of Appeals for the Ninth Circuit reversed. *Pinholster v. Ayers,* 525 F.3d 742 (9th Cir. 2008). The Court of Appeals granted rehearing en

23

banc, vacated the panel opinion, and affirmed the district court's grant of the writ. 563 U.S. at 180. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, holding that the district court should not have considered additional evidence that had not been available to the state courts. *Id*. at 180-81. Because § 2254's habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." *Id.* at 182 (citations omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute grants jurisdiction to a district court to entertain "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2254(a), and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the district court will consider the claim.

24

28 U.S.C. § 2254(b)(1)(A). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent the unusual circumstances detailed below.

a)     Exhaustion

Section 2254 provides in pertinent part:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

     (A)     the applicant has exhausted the remedies available in the courts of the State; or

     (B)     (i) there is an absence of available State corrective process; or

          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Thus, the statute requires that a petitioner first must exhaust his state court remedies prior to seeking habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court."

*Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (citations omitted), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, "a person in custody has two primary means of attacking the validity of his conviction: filing a direct appeal and/or filing an application for relief under the South Carolina Post Conviction Procedure Act." *Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010); *Wilson v. State*, 559 S.E.2d 581, 582-83 (S.C. 2002) ("every defendant has a right to file a direct appeal and one PCR application.") (footnote omitted). State law requires that all grounds for appeal are to be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-90; *see generally* S.C. Code Ann. §§ 17-27-10—160 (Uniform Post-Conviction Procedure Act);[7] *Blakely v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (per curiam). Further, strict time deadlines govern the filing of direct appeals and those seeking PCR in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. SCACR 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if

---

[7] The United States Court of Appeals for the Fourth Circuit has held that South Carolina's Uniform Post-Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10—17-27-160, is a viable state-court remedy. *Miller v. Harvey*, 566 F.2d 879, 880-81 (4th Cir. 1977); *Patterson v. Leeke*, 556 F.2d 1168, 1170-73 & n.1 (4th Cir. 1977) (per curiam).

there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson*, 556 F.2d at 1173. In filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the South Carolina Supreme Court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b)    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of

27

the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. SCACR 203(d)(3). If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *Reed v. Ross*, 468 U.S. 1, 11 (1984). As the United States Supreme Court explains:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Id.* at 10-11 (citation omitted). However, "[i]f a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A federal court is barred from considering the filed claim (absent a showing

28

of cause and actual prejudice). *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by a respondent. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's assertion of procedural default, it is a petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court nonetheless may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A federal court will review a procedurally defaulted claim if the petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96; *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray v. Carrier*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d

29

924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982). He must prove "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice, he nonetheless may surmount the bar of procedural default and obtain habeas review if he can show "that a refusal to entertain those claims would result in a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 309 (1995) (citation omitted). "This avenue of relief, however, is limited to 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Coleman*, 895 F.2d at 144 (*quoting Murray v. Carrier*, 477 U.S. at 496). Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation omitted). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 243-44 (4th Cir. 1999). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup*, 513 U.S. at 327 (citation omitted).

IV.    Analysis

    A.    Habeas Corpus Grounds

        1.    GROUND ONE: Ineffective Assistance of Trial Counsel

        Supporting facts: After the jury had been sworn in trial counsel made a Motion to Quash the Indicment. Trial counsel motion to sequester the witnesses; gave the state and undue advantage against the Petitioner. Trial counsel failed to "object" to the prosecutor's closing argument's to the

jury. Trial counsel failed to "object" to the judge's erroneous jury charge. Trial counsel strategy, to use expert witness, who had only met and observed Petitioner thirty (30) minutes the day before trial.

Petitioner's Ground One sets forth five claims of ineffective assistance of trial counsel:

1.    After the jury had been sworn in, trial counsel made a Motion to Quash the Indictment.
2.    Trial counsel's motion to sequester the witnesses gave the state an undue advantage against the Petitioner.
3.    Trial counsel failed to object to the prosecutor's closing arguments to the jury.
4.    Trial counsel failed to object to the judge's erroneous jury charge.
5.    Trial counsel used an expert witness who had only met and observed Petitioner thirty (30) minutes the day before trial.

As mentioned previously, a petitioner filing a federal habeas corpus petition in federal court may present only those issues that were presented to the Supreme Court of South Carolina or the South Carolina Court of Appeals through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the South Carolina Supreme Court actually reached the merits of the claim. *McKennedy*, 559 S.E.2d at 853.

Respondent contends that all of Petitioner's claims in Ground One were procedurally defaulted in state court and are barred from habeas review. ECF No. 19 at 30. It does not appear that Petitioner has addressed whether the claims in Ground One were procedurally defaulted. Taking these claims in order, the undersigned finds that Petitioner's first three claims of ineffective assistance of counsel were raised to the PCR court as subparts to (A), App. 643-44, 648, and each claim was denied by the PCR court in its written order. ECF No. 19-21. Specifically, the PCR court held, as to Issue #1, that "the Applicant failed to meet his burden of proving trial counsel did not make a proper motion to quash the indictment. This Court finds the Applicant has failed to demonstrate either error or prejudice because a motion to quash the

31

indictment was not filed sooner." ECF No. 19-21 at 4. With respect to Issue #2, the PCR court

held that "the Applicant failed to meet his burden of proving trial counsel did not properly handle

the sequestration issue." *Id.* at 5. Regarding Issue #3, the PCR court ruled:

> [T]he Applicant has failed to meet his burden of proving trial counsel should have
> objected during the assistant solicitor's closing argument. At trial, the assistant
> solicitor stated "their eyewitnesses . . . there are two, there are only two that they
> presented." This Court finds there was no valid, sustainable objection that trial
> counsel could have made respecting this comment that would have changed the
> outcome of the Applicant's trial. . . . This Court finds the State presented
> overwhelming evidence of the Applicant's guilt.

*Id.* at 6-7 (citations omitted). Given these findings, the PCR court concluded that Petitioner

"ha[d] failed to prove the first prong of the <u>Strickland</u> test—that trial counsel failed to render

reasonably effective assistance under prevailing professional norms." *Id.* at 7-8. In addition, the

court held that Petitioner had failed to prove he was prejudiced by trial counsel's performance.

*Id.* at 8.

Although raised to the PCR court, Issues #1, #2, and #3 were not set forth as issues on

appeal from the denial of PCR relief. *See* ECF Nos. 19-14 at 2 & 19-17 at 2. Therefore,

Petitioner failed to exhaust his state remedies as to these claims. If Petitioner were to assert these

claims at this time, the state court would find them procedurally barred. *Mickens v. Taylor*, 240

F.3d 348, 356 (4th Cir. 2001) (en banc) ("The procedural default doctrine bars a claim when the

habeas petitioner fails to exhaust available state remedies and the court to which the petitioner

would be required to present his claims in order to meet the exhaustion requirement would now

find the claims procedurally barred.") (citations omitted).

Petitioner's Issue #4 asserts that trial counsel was ineffective for failing to object to the

judge's erroneous jury charge. In his PCR application, Petitioner initially characterized this claim

as one of trial court error. *See* App. 642 at (9)(D) ("The trial court erred when it erroneously charged the jury, that it may infer malice from the use of a deadly weapon."); *see also* App. 652 ("The trial Court erred when it erroneously charged the jury that it may infer malice from the use of a deadly weapon."). However, in a supplemental memorandum accompanying the PCR application, Petitioner stated: "Applicant asserts he suffered Ineffective Assistance of counsel, when trial counsel failed to 'object' to the . . . trial judge's erroneous jury charge." App. 648 at (5). In addition, Petitioner stated: "Trial counsel may be found deficient for failing to object to . . . erroneous Jury instructions." *Id.* at (5)(A) (citations omitted). Further, Petitioner claimed: "Trial counsel's failure to object to . . . trial court's erroneous jury charge; was very prejudicial to the Applicant and caused Applicant to be denied due process of law. Counsel's failure to make a comtemporaneous [sic] objections to improper arguments, the matter is waived and not properly perserved [sic] for appeal." *Id.* at 650. The undersigned concludes that Petitioner has framed this issue as one claiming ineffective assistance of trial counsel due to a failure to timely object to the trial court's jury instructions. This issue was not argued during the PCR hearing. [8] *See generally* App. 588-635. Respondent contends that this claim "was not ruled upon by the PCR court." ECF No. 19 at 43. While it is true that the PCR court did not specifically address Issue #4 in its order, it held that all issues that counsel had not addressed at the hearing were deemed to have been abandoned:

> As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the

---

[8] In contrast, the issue whether the trial judge erroneously failed to charge the jury on involuntary manslaughter was an issue discussed during the PCR hearing. App. 592-93. This was raised as Issue #4 on direct review.

hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

ECF No. 19-21 at 9. The PCR court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF Nos. 19-16 & 19-17 at 2. Therefore, Petitioner failed to exhaust his state remedies as to this claim, and if Petitioner attempted to assert this claim at this time, the state court would find it time-barred. This claim is procedurally defaulted.[9]

In Petitioner's final claim of ineffective assistance of trial counsel, identified by the undersigned as Issue #5, Petitioner contends that trial counsel was ineffective when she used an expert witness who only had met and observed Petitioner for thirty minutes the day before trial. Petitioner raised this issue in his PCR application, arguing that counsel's use of the expert witness demonstrated "disrespect to the Applicant's Constitutional Rights under the fifth (5th), sixth (6th), and fourteenth (14th) Amendments of the United States Constitution. As well as Article 1, sec. 3 and Article 1, sec. 14 of the South Carolina Constitution." App. 648. Issue #5 was not argued at the PCR hearing. *See generally* App. 588-635. The PCR court did not specifically address Issue #5 in its order, and held that because it had not been addressed at the hearing, this issue had been abandoned. ECF No. 19-21 at 9. The PCR court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR

---

[9] Petitioner appears to rely on *State v. Belcher*, 685 S.E.2d 802 (S.C. 2009), which held that when evidence was presented at trial that would reduce, mitigate, excuse or justify a killing, it was error to charge that malice may be inferred by the use of a deadly weapon. *Id.* at 809. The undersigned notes that Petitioner was found guilty by a jury on October 13, 2005, approximately four years before *Belcher* was decided. South Carolina courts have never required an attorney to be clairvoyant or anticipate changes in the law that were not in existence at time of trial. *Gilmore v. State*, 445 S.E.2d 454, 456 (S.C.1994) (citations omitted), *overruled on other grounds by Brightman v. State*, 520 S.E.2d 614 (S.C. 1999). Certainly it cannot be said that it is ineffective assistance of counsel not to have anticipated a change in the law some four years into the future.

relief. *See* ECF No. 19-16 & 19-17 at 2. Therefore, Petitioner failed to exhaust his state remedies as to this issue.

As with the first three issues, if Petitioner were to assert Issues #4 and #5 at this time, the state court would find them procedurally barred. *Mickens*, 240 F.3d at 356. As mentioned previously, if a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman*, 501 U.S. at 731-32. However, Petitioner may avoid the bar of procedural default and have the claims addressed on the merits by a federal habeas court if he can show cause for the default and actual prejudice, *Coleman*, 501 U.S. at 750, or actual innocence. *Bousley*, 523 U.S. at 623. Petitioner's "Motion for Judgment on the Pleading," and "Response and Return Memorandum of Law in Support of Motion for Summary Judgment," filed in response to the *Roseboro* order, do not argue any cause for the procedural default of the first four claims in Ground One.[10] In the absence of cause, there is no need for this court to consider the issue of prejudice. *See Rodriguez v. Young*, 906 F.2d

---

[10] Petitioner's submissions set forth a mishmash of case law along with a recitation of testimony at trial. The undersigned does not find these pleadings even remotely responsive to Respondent's Memorandum of Law in Support of Motion for Summary Judgment. In addition, Petitioner raises numerous arguments not previously raised in his Petition but raised in his direct appeal—such as whether his *Miranda* rights were violated, whether he was mistreated while being detained, and whether his Fifth Amendment rights were violated when police obtained his written confession. These arguments are not properly before the court. "It is well-settled in this district that new matters cannot be raised in a response to a motion for summary judgment." *Grant v. Stevenson*, Civil Action No. 6:15-1697-BHH-KFM, 2005 WL 10437773, at *9 (D.S.C. Dec. 8, 2015), *adopted in* 2016 WL 892768 (D.S.C. Mar. 9, 2016) (citing *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment") and *Neumon v. Cartledge*, No. 8:14-cv-2256-RMG, 2015 WL 4607732, at *9 n.9 (D.S.C. July 31, 2015) (applying *Roche* in a Section 2254 habeas corpus action)).

1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

It does appear, however, that with respect to Issue #5, Petitioner argues that he is actually innocent of the murder. Petitioner's "Motion for Judgment on the Pleading," construed liberally, appears to argue that Carosmacano's testimony at the PCR hearing—that another man picked up Petitioner's gun and shot the victim, and that Petitioner did not fire the gun—proves that Petitioner is innocent of the murder.[11] ECF No. 26-1 at 11. In his Motion, Petitioner concedes that "actual innocence claims are rare" but that a petitioner "can meet the requirement by showing the district court that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 12 (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013)). Petitioner then engages in a lengthy analysis of *Schlup*, but stops short of claiming that he is actually innocent. Instead, he seeks to have his conviction and sentence vacated due to violations of his rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments. ECF No. 26-1 at 16.

As a threshold matter, Carosmacano's testimony at the PCR hearing directly contradicted Petitioner's testimony at trial; Petitioner testified that he fired the gun several times towards the ground. App. 460-461. And, as the PCR court observed, "the State presented overwhelming evidence of [Petitioner's] guilt." ECF No. 19-21 at 9. To the extent that Petitioner advances an actual innocence claim, the undersigned does not find that is sufficiently supported by "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup*, 513 U.S. at 327 (internal citation omitted). The undersigned does not find

---

[11] Carosmacano testified at the PCR hearing that he had never been interviewed by the police following the shooting. App. 600-03.

that Petitioner has presented sufficient new, reliable evidence to support a claim of actual innocence which would excuse the default.

In conclusion, the undersigned finds that the five claims in Ground One are procedurally barred from consideration by the court. Therefore, it is recommended that Respondent be granted summary judgment on Ground One.

> 2.     GROUND TWO: Ineffective of Assistance of Appellate Counsel
>
> Supporting facts: Appellate counsel was ineffective when he failed to spot a prejudicial issue, that denied Petitioner due process of law: Appellate counsel failed to preserved Petitioner's other four issue: Appellate counsel failed to ask the Supreme Court of South Carolina to remand the case back to the Court of Appeal to make findings and address issue one through four that the court did not address: Appellate counsel failed to raised that the state's brief raised that preservation of error issue.

Respondent contends that the first and third claims in Ground Two were procedurally defaulted in state court and therefore are barred from habeas review, but that the second claim is not procedurally barred. ECF No. 19 at 30. Petitioner does not appear to respond to this argument.

Petitioner's Ground Two raises three separate allegations of ineffective assistance of appellate counsel. In Issue #1, Petitioner contends that his "[a]ppellate counsel was ineffective when he failed to spot a prejudicial issue, that denied Petitioner due process of law." This statement is identical to the statement contained in Petitioner's PCR application. *See* App. 650, at (3). Neither Petitioner's Petition nor his PCR application identifies the "prejudicial issue."[12] Respondent, however, states that Petitioner argued in his PCR application that appellate counsel

---

[12] In Petitioner's PCR application, a line of text is missing from the bottom of page 650. Petitioner argued that "[b]oth the Solicitor, in the Closing Argument and the Trial Judge, in the charge to [text is unreadable]. The instruction is confusing and prejudicial where evidence is presented that would reduce, mitigate, excuse, or justify the homicide." App. at 650-51.

should have asserted on appeal that the solicitor engaged in misconduct when she told the jury that malice could be inferred from the use of a deadly weapon, and that the trial court erred in so instructing the jury. ECF No. 19 at 48.

The PCR court did not specifically address this issue in its order, and held that because it had not been addressed at the hearing, it had been abandoned. ECF No. 19-21 at 9. The PCR court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF No. 19-16 & 19-17 at 2. Therefore, Petitioner failed to exhaust his state remedies as to this collateral review issue. If Petitioner were to assert this claim at this time, the state court would find it procedurally barred. *Mickens*, 240 F.3d at 356.

The record reflects that Petitioner's trial counsel did not object when the solicitor, in her closing argument, stated: "The law gives you several ways that you can imply that a person is acting with malice . . . . And one of them is that they are using a deadly weapon." App. 543-44. Likewise, Petitioner's trial counsel did not object when the trial judge charged the jury: "You may infer malice from the use of a deadly weapon." App. 546-47. Because Petitioner's counsel did not lodge a contemporaneous objection to the solicitor's statement to the jury or to the trial court's jury instruction, the objections were waived. *Williams v. South Carolina*, 740 F. Supp. 1200, 1203 (D.S.C. 1990) (citations omitted) ("Under South Carolina's contemporaneous objection rule, an objection is waived unless made contemporaneously to the objectionable testimony."). As a consequence, the objections were not preserved for direct appellate review. *Mizell v. Glover*, 570 S.E.2d 176, 180 (S.C. 2002) ("In order to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court.") (citations omitted).

The undersigned does not find that Petitioner's appellate counsel provided ineffective assistance when he failed to raise these unpreserved issues on appeal.

Further, the failure to object at trial to an alleged error as required by a state contemporaneous objection rule forecloses federal habeas corpus review of the alleged error "absent a showing of cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice." *Miller v. Cartledge*, Civil Action No. 6:12-1223-MGL, 2013 WL 4042110, at *13 (D.S.C. Aug. 8, 2013) (citing *Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *Lawrence*, 517 F.3d at 714). Petitioner offers no cause for default, nor does he argue prejudice or his actual innocence. Therefore, Issue #1 is barred from habeas review.

Petitioner's Issue #2 claims that appellate counsel was ineffective when he failed to preserve Petitioner's remaining four issues and request that the Supreme Court of South Carolina remand the case back to the Court of Appeals to address issues one through four. This issue was raised in Petitioner's PCR application, App. 642, 650, and specifically argued at the PCR hearing. Petitioner's appellate counsel, Mr. Dudek, testified at the PCR hearing:

> [W]e won in the Court of Appeals on the issue of Mr. Rivera being denied a jury instruction on involuntary manslaughter. So, it was the Attorney General who appealed that issue to the Supreme Court on whether the Court of Appeals incorrectly said the Judge erroneously failed to charge the jury on involuntary manslaughter. The Supreme Court found by a vote of three to two that the Court of Appeals incorrectly reversed the trial judge.

App. 592. Issues one, two, three, and the accident charge issue in five were not addressed by the Court of Appeals. *Id.* at 592-93. The Court of Appeals, on direct review of Petitioner's conviction, had held in its March 18, 2008 opinion that the unaddressed issues were not dispositive:

> The trial judge erred in failing to instruct the jury on involuntary manslaughter and Rivera was prejudiced by this error; thus, he is entitled to a new trial. Furthermore, in light of our disposition of the issue pertaining to the trial judge's refusal to charge the jury on involuntary manslaughter, the remaining issues on appeal are not dispositive and need not be addressed. See Whiteside v. Cherokee County School Dist. No. One, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (appellate court need not address remaining issues when resolution of prior issue is dispositive). Accordingly, Rivera's conviction is [reversed and remanded].

App. 665. Mr. Dudek testified at the PCR hearing that he believed the unaddressed issues were meritorious, and "although it would have certainly been unusual to have" "asked the Supreme Court to remand the case back to the Court of Appeals to make findings and address issues one through four that the Court did not address[,]" he should have done so. Id. at 594.

In its evaluation of Petitioner's claims of ineffective assistance of appellate counsel, the PCR court applied the *Strickland* standard and held in pertinent part:

> . . . Appellate counsel stated he raised five issues on appeal to the Court of Appeals but that the court only addressed one of these issues. Appellate counsel said the State appealed and the Supreme Court reversed the Court of Appeals. Appellate counsel stated that, in retrospect, he wished he had asked the Supreme Court to remand the case back to the Court of Appeals to address the four issues they did not address the first time. Appellate counsel stated he could recall a single instance in which such a request has been successful.

> This Court finds the Applicant failed to meet his burden of proving appellate counsel was ineffective. The Applicant argues appellate counsel should have filed a motion to remand the case to the Court of Appeals–after the Supreme Court opinion was issued–in order for several issues to be addressed. The Applicant, however, failed to point to any case law or precedent that would allow appellate counsel to pursue such action. Rather, appellate counsel merely testified he recalled such a motion was filed by another attorney in his office at some point in the past. This Court does not find appellate counsel was deficient or that the issues that were not ruled upon by the Court of Appeals were meritorious. This Court finds the issues not ruled upon by the Court of Appeals or Supreme Court were unlikely to have been resolved in favor of the Applicant. This Court finds the propositions of law at issue are dubious, and the Court of Appeals most probably decided to address issues that were of marginal merit. Instead the Court of Appeals and Supreme Court chose to discuss the issue of the charge on the law. That, ultimately, was the material issue that needed resolution by the appellate

courts and that issue was properly preserved, presented, and ruled upon. This Court further finds the Applicant cannot prove any prejudice related to this issue since, as noted <u>supra</u>, the State presented overwhelming evidence of guilt.

ECF No. 19-21 at 8-9.

As mentioned previously, Petitioner petitioned for a Writ of Certiorari following the PCR court's denial of relief. Petitioner's *Johnson* petition presented one issue for review:

Did appellate counsel's failure to petitioner this Court for a remand of Appellant's remaining issues back to the Court of Appeals for a ruling on the merits constitute ineffective assistance of counsel?

ECF No. 19-14 at 3. The Supreme Court of South Carolina denied Petitioner's Petition for a Writ of Certiorari, stating:

. . . We find the PCR judge erred in determining appellate counsel was not deficient. However, we have reviewed the final brief petitioner submitted to the Court of Appeals, which petitioner submitted with the petition for a writ of certiorari in this matter, and find the remaining direct appeal issues that were not ruled on are without merit. The PCR Judge was therefore correct in finding petitioner was not prejudiced by appellate counsel's deficiency. Accordingly, the petition is denied.

ECF No. 19-19. Thus, the Supreme Court of South Carolina held that while Petitioner's appellate counsel was deficient, Petitioner was not prejudiced by the deficiency because "the remaining direct appeal issues that were not ruled on are without merit." *Id.* The undersigned finds that this claim is not procedurally barred from review and will proceed to address it on the merits.

A defendant has a constitutional right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). In analyzing whether appellate counsel provided ineffective assistance, a petitioner must satisfy the *Strickland* test. *Williams*, 529 U.S. at 391 ("the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims"). Further, the undersigned is mindful of the United States Supreme

41

Court's admonition that the review of ineffective assistance of counsel claims pursuant to *Strickland* and § 2254 is "doubly deferential." *Pinholster*, 563 U.S. at 190 (citations omitted); *Harrington*, 562 U.S. at 105 (citations omitted). Further, as *Harrington* teaches, "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [and] [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." 562 U.S. at 105.

"In order to show that he was prejudiced by appellate counsel's performance, a PCR applicant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Evans v. McCoy*, C/A No 5:12-3557-JFA-KDW, 2014 WL 1254147, at *7 (D.S.C. Mar. 26, 2014) (quoting *Bennett v. State*, 680 S.E.2d 273, 276 (S.C. 2009)). In reviewing this issue, the undersigned has the benefit of the written opinions of the PCR court and of the Supreme Court of South Carolina. As the latter court reasoned, Petitioner's appellate counsel was deficient because he had not requested a remand to the Court of Appeals for a ruling on the other four issues. This was a reasonable conclusion, because a remand under such circumstances is a viable procedural avenue that has been recognized in South Carolina. *See, e.g., Shatto v. McLeod Reg'l Med. Ctr.*, 753 S.E.2d 416, 422 (S.C. 2013) (Supreme Court of South Carolina, after reversing court of appeals' opinion, remanded case to court of appeals to address additional issue raised to, but not ruled on, by that court). In the present case, however, the Supreme Court of South Carolina further held that Petitioner had not been prejudiced by appellate counsel's error because the other four claims were "without merit." ECF No. 19-19. Therefore, appellate counsel was not deficient when he failed to raise these issues. "Effective assistance of appellate counsel does not require the

presentation of all issues on appeal that may have merit[.]" *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (citing *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc); *see also Dykeman v. Warden, Lieber Corr. Inst.,* Civil Action No. 8:13-2933-MGL, 2015 WL 1011337, at *1 (D.S.C. Mar. 5, 2015) (citing *Thrift v. State*, 397 S.E.2d 523, 526 (1990) ("Appellate counsel is not required to raise every non-frivolous issue on appeal.")). Because it is well-settled that appellate counsel is not deficient if he fails to raise all meritorious issues, it necessarily follows that appellate counsel cannot be considered deficient if he fails to raise *non*-meritorious issues. Appellate counsel's performance was not deficient. As mentioned previously, habeas relief is available only when a state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). The standard of review to be applied is highly deferential to the rulings of the state courts, and state-court decisions are to be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has failed to overcome the deferential standard of review accorded the Supreme Court of South Carolina's determination of this issue, and has failed to show that the state court's findings on this issue are unreasonable. Therefore, the undersigned concludes that Issue #2 is without merit.

Petitioner's Issue #3 in Ground Two alleges that "[a]ppellate counsel failed to raise[] that the state's brief raised that preservation of error issue." A close reading of Petitioner's PCR application and accompanying memorandum does not assist the undersigned in understanding the basis of this claim. It does not appear to have been raised in Petitioner's PCR application; the undersigned suspects that this claim stems from trial counsel's testimony at the PCR hearing to

the effect that grounds two, three and four in Petitioner's direct appeal had not been preserved for appellate review. App. 607. However, the undersigned cannot, when reviewing a ground for habeas corpus relief, base a recommendation on conjecture. *See, e.g., Dillon v. Downes*, 401 F. Supp. 1240, 1242 (W.D. Va. 1975) ("The petitioner has failed to provide this court with any information with which to justify habeas relief[.]"). Respondent argues that Petitioner's "claim is too vague to warrant relief." ECF No. 19 at 53 (citing *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir.1970) ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error.")). Although the federal court is charged with liberally construing a pro se petition to permit the development of a potentially meritorious case, *Erickson*, 551 U.S. at 93-94, the undersigned cannot ignore a failure to allege facts sufficient to set forth a federal claim. *Weller*, 901 F.2d at 391. The undersigned agrees that "[v]ague allegations, without any explanation of the alleged constitutional errors, do not warrant federal habeas relief." *Grant v. Bush*, No. 6:14-cv-01313-DCN, 2015 WL 4747104, at *16 (D.S.C. Aug. 11, 2015) (citing *McKissick v. Warden Evans Corr. Inst.*, C.A. No. 2:12-cv-15-RBH, 2013 WL 4585613, at *10 (D.S.C. Aug. 28, 2013) (citing Rule 2(c) of the Rules Governing Section 2254 Cases ("The petition must . . . state the facts supporting each ground . . . ."))).

In light of the foregoing analysis, it is recommended that Respondent be granted summary judgment on all of the issues set out in Ground Two.

### 3.    GROUND THREE: Prosecutor Misconduct

Supporting facts: The Prosecutor's statement in the closing argument: "That Malice can be Implied by the use of a Deadly Weapon." The prosecutor is guilty of misconduct, by vouching for the Credibility of their witness, as was done in the Petitioner case.

As a preliminary matter, this claim does not sound in habeas because Petitioner has not claimed a federal Constitutional violation resulting from the solicitor's alleged actions. *See* 28 U.S.C. 2254(a); *see also Corcoran*, 562 U.S. at 5 ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Respondent contends that the claims in Ground Three were procedurally defaulted in state court and therefore are barred from federal habeas review. ECF No. 19 at 30. The undersigned agrees. Ground Three appears to allege two claims of prosecutorial misconduct. In Issue #1, Petitioner contends that the solicitor engaged in misconduct when, at closing, she argued: "That Malice can be Implied by the use of a Deadly Weapon." Assuming, without deciding, that this argument was improper and thus provided a basis for a legitimate objection, Petitioner's trial counsel did not lodge a contemporaneous objection to the statement at trial. Therefore, this error was not preserved for direct review. "Generally under South Carolina law, direct appeal is the only avenue of relief for trial related errors of a non-constitutional dimension." *Kornahrens*, 66 F.3d at 1361-62 (citing *Simmons v. State*, 264 S.C. 417, 215 S.E.2d 883, 885 (1975)). "Therefore, if a defendant fails to raise a trial related error on direct appeal, he has defaulted the claim." *Id.* at 1362. Therefore, this claim is procedurally defaulted.

Next, Petitioner claims that the solicitor's statement "[t]hat [m]alice can be [i]mplied by the use of a [d]eadly [w]eapon" improperly vouched for the credibility of a witness. This issue was not raised on direct appeal, but it was raised in Petitioner's PCR application. *See* App. 642 at (9)(C); *see also* App. 649-50(C) *and* App. 651-652(C). This issue was not argued to the PCR court, and the PCR court held that this issue had been abandoned. ECF No. 19-21 at 9. The PCR

45

court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF Nos. 19-16 & 19-17 at 2. Thus, this claim has been procedurally defaulted.

Petitioner may avoid the procedural default bar and have these two claims addressed on the merits by the court if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that he is actually innocent. *Coleman*, 501 U.S. at 750; *Rodriguez*, 906 F.2d at 1159; *Bousley*, 523 U.S. at 623. Petitioner offers no cause for the default of these issues, nor does he argue prejudice or his actual innocence. Therefore, these claims are barred from habeas review, and it is recommended that Respondent be granted summary judgment on the two issues set forth in Ground Three.

4.    GROUND FOUR: Trial Court Erred

Supporting facts: The trial court's erred when it erroneously charge the jury that infer malice from the use of a deadly weapon. The trial court's erred and abuse of their discretion by ruling interpreter, Carlos Freeman would not be allowed to testify because he was in violation of the sequestration order.

To the extent Ground Four raises claims that are cognizable in a federal habeas corpus action, Respondent contends that these claims were procedurally defaulted in state court and therefore are barred from federal habeas review. ECF No. 19 at 30. The undersigned does not find that the claims in Ground Four sound in habeas. As a threshold matter, "[a] state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas

46

review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The undersigned interprets Ground Four as raising two issues: first, whether the trial court erred when it charged the jury that it could infer malice from the use of a deadly weapon, and second, whether it erred when it ruled that trial counsel's investigator, Carlos Freeman, could not testify. These claims do not allege a deprivation of federal rights. With respect to the first issue, "[a]lleged errors in state court jury instructions are matters of state law and typically do not provide a basis for federal habeas relief." *Temoney v. Sapp*, 06-1983-CMC, 2007 WL 752200, at *8 (D.S.C. Mar. 1, 2007). Thus, a habeas court will decline to review jury instructions grounded in state law. *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998) (refusing to entertain claim that jury instruction misstated South Carolina law). Further, Petitioner's counsel did not object to this jury instruction at trial. Therefore, the issue was not preserved for appeal.[13] *See McKenzie v. Cartledge*, No. 8:13-CV-02488-RBH, 2014 WL 3919711, at *2 (D.S.C. Aug. 11, 2014), *appeal dismissed*, 595 F. App'x 240 (4th Cir. 2015) (finding a procedural bar where "Petitioner raised the issue on direct appeal to the South Carolina Court of Appeals, [and] the appellate court found that the issue was unpreserved for direct review. Indeed, South Carolina appellate courts require that issues be adequately raised to and ruled upon by a trial court for appellate review for error.").

It is true that Issue #1 was raised in Petitioner's PCR application as Issue (D). *See* App. 642 at (9)(D) ("The trial court erred when it erroneously charged the jury, that it may infer

---

[13] Issue #2 in Ground Four was raised as Issue #3 on direct appeal, but as the Assistant Attorney General stated at the PCR hearing, the State had raised a preservation of error issue as to Issues #2, #3, and #4. App. 595-96.

malice from the use of a deadly weapon."). However, this issue was not argued to the PCR court, and the PCR court held that the issue had been abandoned. ECF No. 19-21 at 9. The PCR court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF Nos. 19-16 & 19-17 at 2. This claim would be time-barred if Petitioner attempted to assert it in state court at this time. Therefore, it is procedurally defaulted. Petitioner does not argue cause for the default, nor does he argue prejudice or actual innocence. Therefore, this claim is barred from habeas review, and it is recommended that Respondent be granted summary judgment as to Issue #1 in Ground Four.

Issue #2 was raised in Petitioner's PCR application as issue (H): "The court abused his discretion by ruling Interpreter and defen[s]e Investigator, Carlos Freeman could not testify as a defense witness." App. 642. Petitioner's trial counsel, when arguing that Mr. Freeman should be allowed to testify, did not claim a violation of Petitioner's constitutional rights. App. 381-82. 449-451. Petitioner's trial counsel stated: "I'd also renew my objection to Carlos Freeman being permitted [sic] from testifying. He was on the witness list from the beginning. No objection was made when he stayed in the court[room]." App. 450-51. As to Issue #2, "federal habeas corpus does not lie to correct error[s] . . . in the exclusion or admissibility of evidence." *Foster v. Watkins*, 423 F. Supp. 53, 55 (W.D.N.C. 1976), *aff'd*, 570 F.2d 501 (4th Cir. 1978). This is because state evidentiary matters are not generally the basis for federal habeas relief unless they involve federal constitutional issues. *Chance v. Garrison,* 537 F.2d 1212, 1215 (4th Cir. 1976). As with Issue #1, Issue #2 was not argued to the PCR court, and the PCR court held that the issue had been abandoned. ECF No. 19-21 at 9. The PCR court's conclusion that this claim had been abandoned was not set forth as an issue on appeal from the denial of PCR relief. *See* ECF

Nos. 19-16 & 19-17 at 2. This claim would be time-barred if Petitioner attempted to assert it in state court at this time. Therefore, it is procedurally defaulted. Petitioner does not argue cause for the default, nor does he argue prejudice or actual innocence. Therefore, this claim is barred from habeas review.

Therefore, it is recommended that Respondent be granted summary judgment on the claims set forth in Ground Four.

V.    Conclusion and Recommendation

Based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

November 9, 2016                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**